**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**

CENTENE CORPORATION, ABSOLUTE TOTAL CARE, INC., BUCKEYE COMMUNITY HEALTH PLAN, INC., COORDINATED CARE OF WASHINGTON, INC., WELLCARE OF MISSISSIPPI, INC., WELLCARE OF GEORGIA, INC., WELLCARE OF TEXAS, INC., HEALTH NET OF ARIZONA, INC., HEALTH NET OF CALIFORNIA, INC., WELLCARE OF CONNECTICUT, INC., WELLCARE HEALTH PLANS OF NEW JERSEY, INC., SUNSHINE STATE HEALTH PLAN, INC., NEBRASKA TOTAL CARE, INC., HARMONY HEALTH PLAN, INC., WELLCARE OF IOWA, INC., TRILLIUM COMMUNITY HEALTH PLAN, INC., WELLCARE HEALTH INSURANCE OF ARIZONA, INC., AMERICAN PROGRESSIVE LIFE AND HEALTH INSURANCE COMPANY OF NEW YORK, COORDINATED CARE CORPORATION, HEALTH NET COMMUNITY SOLUTIONS, INC., WELLCARE HEALTH INSURANCE COMPANY OF KENTUCKY, INC., CELTIC INSURANCE COMPANY, WELLCARE OF SOUTH CAROLINA, INC., WELLCARE OF CALIFORNIA, INC., SUPERIOR HEALTHPLAN, INC., HEALTH NET LIFE INSURANCE COMPANY, MERIDIAN HEALTH PLAN OF MICHIGAN, INC., BRIDGEWAY HEALTH SOLUTIONS OF ARIZONA, INC., NEW YORK QUALITY HEALTHCARE CORPORATION, MERIDIAN HEALTH PLAN OF ILLINOIS, INC., SUNFLOWER STATE HEALTH PLAN, INC., HEALTH NET HEALTH PLAN OF OREGON, INC., WELLCARE OF MISSOURI HEALTH INSURANCE COMPANY, INC., MANAGED HEALTH SERVICES INSURANCE CORP., WELLCARE OF MAINE, INC., and

Civil Action No. [__]

ARKANSAS HEALTH & WELLNESS HEALTH PLAN, INC.,

Plaintiffs,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Hubert H. Humphrey Building
200 Independence Avenue, S.W.
Washington, D.C. 20201

CENTERS FOR MEDICARE & MEDICAID SERVICES
7500 Security Boulevard
Baltimore, MD 21244

Defendants.

**COMPLAINT**

Plaintiffs Centene Corporation, Absolute Total Care, Inc., Buckeye Community Health Plan, Inc., Coordinated Care of Washington, Inc., WellCare of Mississippi, Inc., WellCare of Georgia, Inc., WellCare of Texas, Inc., Health Net of Arizona, Inc., Health Net of California, Inc., WellCare of Connecticut, Inc., WellCare Health Plans of New Jersey, Inc., Sunshine State Health Plan, Inc., Nebraska Total Care, Inc., Harmony Health Plan, Inc., WellCare of Iowa, Inc., Trillium Community Health Plan, Inc., WellCare Health Insurance of Arizona, Inc., American Progressive Life and Health Insurance Company of New York, Coordinated Care Corporation, Health Net Community Solutions, Inc., WellCare Health Insurance Company of Kentucky, Inc., Celtic Insurance Company, WellCare of South Carolina, Inc., WellCare of California, Inc., Superior HealthPlan, Inc., Health Net Life Insurance Company, Meridian Health Plan of Michigan, Inc., Bridgeway Health Solutions of Arizona, Inc., New York Quality Healthcare Corporation, Meridian Health Plan of Illinois, Inc., Sunflower State Health Plan, Inc., Health Net Health Plan of Oregon,

Inc., WellCare of Missouri Health Insurance Company, Inc., Managed Health Services Insurance Corp., WellCare of Maine, Inc., and Arkansas Health & Wellness Health Plan, Inc. (collectively, "Centene"), by and through their undersigned counsel, bring this Complaint seeking relief against Defendants the United States Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS") (together, "Defendants"). In support thereof, Centene alleges as follows:

**INTRODUCTION**

1. Star Ratings are the lifeblood of the Medicare Advantage ("MA") program. They dictate the amount of revenue a Medicare Advantage Organization ("MAO") receives from the federal government, which in turn determines the benefits, premiums, and quality programs that MAOs can offer to their members. In developing the Stars program and in recognizing the importance of Stars to MAOs, Congress developed specific safeguards to ensure that Stars scores are developed using specific data. Furthermore, the Medicare Act requires that CMS promulgate rules affecting payment (among other things) through formal regulatory rulemaking.

2. Centene brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., to set aside CMS's calculation of the 2027 Star Ratings for Centene's contracts listed in Exhibit A. Such relief is appropriate because CMS violated the core statutory safeguards in implementing 17 measures, causing significant injury to Centene. Specifically, in implementing each of the individual Star measures that Centene challenges, CMS violated applicable law and thereby caused Centene to lose out on hundreds of millions of dollars in revenue that Centene could use to strengthen benefits, reduce premiums, and improve health outcomes.

3. In bringing this action, Centene does not ask the Court to break new ground. This Court considered and found persuasive identical legal arguments in *Clover Insurance Co. v. U.S.*

*Dep't of Health & Human Servs.*, No. 2:25-cv-142, 2026 WL 1483515 (S.D. Ga. May 27, 2026). In *Clover*, this Court determined that CMS' use of certain measures used to calculate the plaintiff's 2026 Star Ratings were unlawful because they either were adopted in excess of its statutory authority under 42 U.S.C. § 1395w-23(o)(4)(A) or without observation of public notice-and-comment rulemaking required by 42 U.S.C. § 1395hh(a)(2). Accordingly, this Court set aside the plaintiff's 2026 Star Ratings and ordered CMS to recalculate them without the infringing measures. That precedent provides for the same relief in this case.

4. On October 8, 2026, CMS published Centene's 2027 Star Ratings for its contracts in this case using 17 measures that CMS adopted in excess of its statutory authority under § 1395w-23(o)(4)(A), without the notice-and-comment rulemaking required by § 1395hh(a)(2), or both. Thus, CMS continues to rely upon Stars measures that have been unlawfully adopted and implemented. Moreover, although this Court's *Clover* decision was expressly limited to Clover's 2026 Star Ratings, CMS voluntarily excluded the measures struck down in that case when calculating Clover's current 2027 Star Ratings. In doing so, CMS has effectively conceded the validity of the legal arguments underlying this case, as there is no material legal distinction between the measures excluded for Clover and those challenged by Centene here.

5. Had CMS calculated the 2027 Star Ratings without using these 17 unlawful measures, Centene estimates that it would receive approximately $448 million in increased 2028 quality bonus payments ("QBPs") and rebate retention. These are funds that Centene could deploy on behalf of its members through expanded benefits, lower premiums, and investments in quality improvement activities such as increased care coordination.

6. Beyond the financial impact to the company and its members, depressed ratings also inflict significant reputational damage and diminished membership. Specifically, CMS makes

overall and individual measure Star Ratings publicly available through its Medicare Plan Finder tool, which shapes beneficiary enrollment decisions and other consumer choices. By incorporating unlawful measures into the 2027 Star Ratings calculation, CMS portrayed Centene's ratings less favorably in the eyes of Medicare Advantage consumers compared to competing MAOs that benefit from the unlawful measures, thereby undermining Centene's ability to compete for Medicare beneficiaries.

7. Providing redress for CMS's statutory violations is critical to maintaining the integrity and promoting the purpose of the MA Stars program. Congress created the MA program to harness private competition to provide seniors greater choice and higher-quality healthcare; the Star Ratings program was adopted as the principal mechanism for promoting that competition. Because Star Ratings determine the allocation of billions of dollars in QBPs and rebate retentions—funds that may be invested in enhanced benefits, reduced premiums, and quality improvement for Medicare beneficiaries—Congress's statutory guardrails reflect Congress's deliberate judgment that the effectiveness of the Star Ratings system depends on predictable, transparent, and lawfully adopted measures grounded in clinical quality, health outcomes, and beneficiary satisfaction.

8. By enacting measures in violation of these statutory requirements and applying them to Centene's challenged contracts, Centene has been substantially injured. Therefore, CMS should be ordered to recalculate Centene's 2027 Star Ratings for the contracts listed in Exhibit A without regard to the 17 unlawful measures challenged here.

**JURISDICTION, VENUE, AND EXHAUSTION**

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. § 701 *et seq.*, and raises questions under the Medicare statute, 42 U.S.C. § 1395 *et seq.*

10. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against United States agencies and a substantial part of the events or omissions giving rise to the claims occurred within this District.

11. Among the contracts held by Centene that were negatively impacted by CMS's use of the 17 unlawful measures in calculating the 2027 Star Ratings, contract H1112 was one that incurred significant harm. Specifically, under the 2027 Star Ratings as calculated and published by CMS, H1112 received an overall Star Rating of 3.5 Stars, but had CMS not included the 17 measures challenged here, it would have received an overall Star Rating of 4. H1112 operates MA health plans in Georgia service areas and serves thousands of members in this District.

12. On October 8, 2026, CMS published Centene's 2027 Star Ratings, constituting unlawful final agency action. The ratings were disseminated to, among others, the thousands of members who reside in this District.

13. No administrative mechanism exists by which Centene may obtain reconsideration of the CMS actions challenged in this Complaint.

14. Centene has standing because it offers plans whose 2027 Star Ratings were calculated using 17 measures that exceeded CMS's statutory authority or were adopted without regard to procedures required by law. Those unlawful measures impacted Centene's ratings, inflicting substantial economic harm and placing Centene at a competitive disadvantage in the MA marketplace.

15. Centene's improperly calculated Star Ratings will inflict substantial economic harm on Centene, amounting to approximately $448 million over the course of 2028.

## FACTUAL ALLEGATIONS

### I. The Parties and the contracts

16. Centene Corporation is a Delaware corporation with its principal place of business located in St. Louis, Missouri.

17. Centene, one of the nation's leading health insurers, provides health and dental benefit products through its affiliates and subsidiaries. Through those affiliates' and subsidiaries' contracts with CMS, Centene delivers coverage to Medicare beneficiaries under Parts C and D, including the following:

a. Contract H1112, entered into with CMS by WellCare of Georgia, Inc., currently has approximately 26,000 enrollees in Georgia, including thousands in this District. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

b. Contract H0029, entered into with CMS by Coordinated Care of Washington, Inc., currently has approximately 32,000 enrollees in Washington. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 2.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

c. Contract H0074, entered into with CMS by WellCare of Mississippi, Inc., currently has approximately 1,000 enrollees in Mississippi. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

d. Contract H0174, entered into with CMS by WellCare of Texas, Inc., currently has approximately 53,000 enrollees in Texas. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4.5 Stars.

e. Contract H0351, entered into with CMS by Health Net of Arizona, Inc., currently has approximately 23,000 enrollees in Arizona and Nevada. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

f. Contract H0562, entered into with CMS by Health Net of California, Inc., currently has approximately 24,000 enrollees in California. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4.5 Stars.

g. Contract H0712, entered into with CMS by WellCare of Connecticut, Inc., currently has approximately 7,000 enrollees in Connecticut. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star

Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4.5 Stars.

h. Contract H0913, entered into with CMS by WellCare Health Plans of New Jersey, Inc., currently has approximately 13,000 enrollees in New Jersey. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

i. Contract H1032, entered into with CMS by Sunshine State Health Plan, Inc., currently has approximately 49,000 enrollees in Florida. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 4 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4.5 Stars.

j. Contract H1215, entered into with CMS by Nebraska Total Care, Inc., currently has approximately 3,000 enrollees in Nebraska. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 2.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3 Stars.

k. Contract H1416, entered into with CMS by Harmony Health Plan, Inc., currently has approximately 56,000 enrollees in Arkansas, Illinois, Mississippi, and Tennessee. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

l. Contract H1862, entered into with CMS by WellCare of Iowa, Inc., currently has approximately 13,000 enrollees in Iowa. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 2.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

m. Contract H2174, entered into with CMS by Trillium Community Health Plan, Inc., currently has approximately 5,000 enrollees in Oregon. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 2.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

n. Contract H2491, entered into with CMS by WellCare Health Insurance of Arizona, Inc., currently has approximately 10,000 enrollees in Louisiana. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

o. Contract H2775, entered into with CMS by American Progressive Life and Health Insurance Company of New York, currently has approximately 58,000 enrollees in Maine and New York. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

p. Contract H3499, entered into with CMS by Coordinated Care Corporation, currently has approximately 4,000 enrollees in Indiana. Centene Corporation is the designated

parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

q. Contract H3561, entered into with CMS by Health Net Community Solutions, Inc., currently has approximately 46,000 enrollees in California. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4.5 Stars.

r. Contract H3975, entered into with CMS by WellCare Health Insurance Company of Kentucky, Inc., currently has approximately 4,000 enrollees in Kentucky. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

s. Contract H4158, entered into with CMS by Buckeye Community Health Plan, Inc., currently has approximately 7,300 enrollees in Ohio. Centene Corporation is the designated parent corporation under the MA program for this contract. Contract H4158 is considered a "new" contract for Star Rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Centene Corporation's contracts.

t. Contract H4847, entered into with CMS by WellCare of South Carolina, Inc., currently has approximately 7,000 enrollees in South Carolina. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

u. Contract H5087, entered into with CMS by WellCare of California, Inc., currently has approximately 13,000 enrollees in California. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4.5 Stars.

v. Contract H5272, entered into with CMS by Absolute Total Care, Inc., currently has approximately 5,100 enrollees in South Carolina. Centene Corporation is the designated parent corporation under the MA program for this contract. Contract H5272 is considered a “new” contract for Star Rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Centene Corporation’s contracts.

w. Contract H5294, entered into with CMS by Superior HealthPlan, Inc., currently has approximately 17,000 enrollees in Texas. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

x. Contract H5439, entered into with CMS by Health Net Life Insurance Company, currently has approximately 19,000 enrollees in Oregon and Washington. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

y. Contract H5475, entered into with CMS by Meridian Health Plan of Michigan, Inc., currently has approximately 19,000 enrollees in Michigan. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received

a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4.5 Stars.

z. Contract H5590, entered into with CMS by Bridgeway Health Solutions of Arizona, Inc., currently has approximately 27,000 enrollees in Arizona. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

aa. Contract H5599, entered into with CMS by New York Quality Healthcare Corporation, currently has approximately 69,000 enrollees in New York. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

bb. Contract H5779, entered into with CMS by Meridian Health Plan of Illinois, Inc., currently has approximately 13,000 enrollees in Illinois. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

cc. Contract H6550, entered into with CMS by Sunflower State Health Plan, Inc., currently has approximately 2,000 enrollees in Kansas. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 2.5 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3 Stars.

dd. Contract H6815, entered into with CMS by Health Net Health Plan of Oregon, Inc., currently has approximately 12,000 enrollees in Oregon. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

ee. Contract H6971, entered into with CMS by Meridian Health Plan of Illinois, Inc., currently has approximately 15,100 enrollees in Illinois. Centene Corporation is the designated parent corporation under the MA program for this contract. Contract H6971 is considered a "new" contract for Star Rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Centene Corporation's contracts.

ff. Contract H7326, entered into with CMS by WellCare of South Carolina, Inc., currently has approximately 13,000 enrollees in South Carolina. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

gg. Contract H7435, entered into with CMS by Meridian Health Plan of Michigan, Inc., currently has approximately 6,200 enrollees in Michigan. Centene Corporation is the designated parent corporation under the MA program for this contract. Contract H7435 is considered a "new" contract for Star Rating purposes and, therefore, is entitled to receive the enterprise weighted average of all of Centene Corporation's contracts.

hh. Contract H7518, entered into with CMS by WellCare of Missouri Health Insurance Company, Inc., currently has approximately 3,000 enrollees in Missouri. Centene Corporation is the designated parent corporation under the MA program for this contract. This

contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

ii. Contract H8189, entered into with CMS by Managed Health Services Insurance Corp., currently has approximately 13,000 enrollees in Wisconsin. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 4 Stars.

jj. Contract H9364, entered into with CMS by WellCare of Maine, Inc., currently has approximately 15,000 enrollees in Maine. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

kk. Contract H9630, entered into with CMS by Arkansas Health & Wellness Health Plan, Inc., currently has approximately 21,000 enrollees in Arkansas. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

ll. Contract H9730, entered into with CMS by WellCare Health Insurance Company of Kentucky, Inc., currently has approximately 36,000 enrollees in Kentucky. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 3 Stars. Had CMS calculated the 2027 Star Rating without the 17 improper measures, this contract would have received an overall Star Rating of 3.5 Stars.

mm. Contract H4661, entered into with CMS by Celtic Insurance Company, currently has approximately 4,000 enrollees in Delaware. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received an overall 2027 Star Rating of 2.5 Stars and a summary Part D Star Rating of 2.5 Stars. When a contract receives a Part C or Part D summary Star Rating less than 3 Stars, the contract receives a "Low-Performance Indicator" ("LPI"), which is displayed on the Medicare Plan Finder. An LPI acts as a visual warning to current and potential beneficiaries that a plan has a low Star Rating. This, in turn, leads to decreased enrollment and increased disenrollment. If a plan holds an LPI for three consecutive Star Rating periods, CMS has the legal authority to terminate the contract in its entirety. CMS applied an LPI to contract H4661 due to it falling below the 3.0 summary Part D Star Rating with the inclusion of the unlawful measures. Without the unlawful measures, the LPI would not apply to this contract.

nn. Contract H6348, entered into with CMS by Coordinated Care Corporation, currently has approximately 6,000 enrollees in Indiana. Centene Corporation is the designated parent corporation under the MA program for this contract. This contract received a 2027 Star Rating of 2.5 Stars. CMS applied an LPI to contract H6348 due to it falling below the 3.0 summary Part D Star Rating with the inclusion of the unlawful measures. Without the unlawful measures, the LPI would not apply to this contract.

18. Defendant HHS is a department of the Executive Branch of the United States government responsible for overseeing the Medicare program. Its headquarters are located at 200 Independence Ave., S.W., Washington, D.C. 20201. HHS has delegated authority over the administration of the Medicare program to CMS. *See* 66 Fed. Reg. 35437-03 (June 5, 2001).

19. CMS is the component agency within HHS that bears primary responsibility for administering and overseeing the Medicare program. *See id.* Its headquarters are located at 7500 Security Blvd., Baltimore, MD 21244.

## II. <u>Medicare Advantage</u>

20. Medicare is a federal health insurance program created to provide coverage for Americans aged 65 and older, along with qualifying individuals with disabilities. *See* 42 U.S.C. § 1395 *et seq.*

21. Medicare comprises four parts, each addressing distinct aspects of healthcare for its beneficiaries. Part A covers inpatient hospital stays, skilled nursing facilities, hospice care, and home health care. Part B covers outpatient care, physician visits, preventive services, home health care, and durable medical equipment. *See* 42 U.S.C. §§ 1395c through 1395i-6 (Part A); 42 U.S.C. §§ 1395j through 1395w-6 (Part B). Under Parts A and B—collectively known as "traditional" or "original" Medicare—the federal government acts as the insurer and directly reimburses providers for services provided to enrolled beneficiaries.

22. Alternatively, a beneficiary may choose to enroll in Medicare Part C, known since 2003 as Medicare Advantage, instead of traditional Medicare. Congress created Medicare Part C through the Balanced Budget Act of 1997. *See* 42 U.S.C. § 1395w-21 *et seq.* Under the Medicare Advantage program, CMS enters into contracts with private health insurers to deliver Medicare-covered benefits to enrolled beneficiaries, transferring the financial risk of benefit delivery from the federal government to privately operated MAOs, which receive a fixed monthly payment for each enrolled member. *See* 42 U.S.C. § 1395w-23. That per-member, per-month payment must be at least equal to traditional Medicare spending per enrollee.

23. MAOs must provide their members with benefits no less comprehensive than those available under traditional Medicare. MAOs combine coverage from Parts A and B and commonly also offer prescription drug coverage under Part D, which was enacted in 2003 and took effect in 2006 as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066 (2003). *See* 42 U.S.C. § 1395 *et seq.*

24. Among other programmatic changes, the MMA created an annual bidding process. *See id.* § 1395w-23(a)(1)(B). Each year, MAOs submit a bid by the first Monday in June estimating the cost of providing core Medicare benefits for the upcoming plan year, inclusive of overhead and profit. *See id.* When the bid is lower than CMS's county-level benchmark, CMS returns a portion of the savings to the MAO as a "rebate"—funds the MAO may allocate toward supplemental benefits, premium reductions, or both. *See id.* § 1395w-23(a)(1)(E).

## III. <u>Star Ratings and their impact on MAOs</u>

### A. Medicare Star Rating calculations

25. CMS first published annual performance ratings for stand-alone Medicare Prescription Drug Plans in 2007. The following year, CMS "introduced and displayed the Star Ratings for Medicare Advantage Organizations . . . for both Part C only contracts . . . and Part C and D contracts (MA-PDs). Each year since 2008, [CMS has] released the MA Star Ratings [subsequently adding] [a]n overall rating combining health and drug plan measures" in 2011. 83 Fed. Reg. 16440, 16520 (April 16, 2018).

26. Even a decade before the Star Ratings program was launched, however, MAOs were required to maintain "an ongoing quality assurance program" for the healthcare services provided to their members. Pub. L. No. 105-33, § 4001, 111 Stat. 251, 291 (1997) (codified at 42 U.S.C. § 1395w-22(e)(1)). Congress expressly granted CMS the authority to select the "quality and outcomes measures" that the Secretary "determine[d] to be appropriate" as elements of plans'

quality assurance programs. 42 U.S.C. § 1395w-22(e)(1), (e)(2)(A)(xii) (1997). That broad discretion produced uncertainty and confusion, as CMS proposed various quality measures and practice standards with little constraint.

27. In 2003, Congress resolved this uncertainty by codifying CMS's quality measures into statute. *See* MMA, Pub. L. No. 108-173, § 109, 117 Stat. 2066 (2003). These amendments limited CMS to requiring quality-measure data that were "the types of data that were collected by the Secretary as of November 1, 2003," allowing departure from those data types only after submission of a report to Congress. 42 U.S.C. § 1395w-22(e)(3)(B).

28. In 2004, CMS acknowledged that it was constrained under § 1395w-22(e) and that it would thereafter rely solely on its pre-existing, pre-2003 measurement systems addressing clinical quality, health outcomes, and beneficiary satisfaction: the Healthcare Effectiveness Data and Information Set ("HEDIS"), Health Outcomes Survey ("HOS"), and Consumer Assessment of Healthcare Providers and Systems ("CAHPS"). *See* 69 Fed. Reg. 46,866, 46,886 (Aug. 3, 2004) ("We interpret section 1852(e)(3)(B)(i) of the Act to mean that we can continue to require MA coordinated care plans to collect, analyze, and report their performance by using the measurement systems that are currently required, such as HEDIS, Health Outcomes of Seniors (HOS), and CAHPS, as appropriate for the type of plan.").

29. CMS launched its Star Ratings system in 2007. In 2010, the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119 (2010), established the Quality Bonus Payment program and adopted the Star Ratings system as its implementing mechanism. Congress designated § 1395w-22(e) as the exclusive source of data for quality rating calculations, omitting the clause that had previously given the Secretary discretion to consider other measures. *See* 42 U.S.C. § 1395w-23(o)(4)(A).

30. Each contract's overall Star Rating is a composite score on a scale of 1 to 5 stars, including half-star increments, calculated by evaluating the contract's performance on "measures" designated by CMS. Individual measures carry varying weights (as assigned by CMS) and are aggregated to produce the contract's single summary rating. CMS publishes its Star Rating methodology in annual sub-regulatory guidance documents known as "Technical Notes," which specify the applicable measures and other key data used to assign measure-level scores. CMS updates these Technical Notes, and the measures they describe, outside of notice-and-comment rulemaking.

31. Because the overall Star Rating represents a weighted average, performance on any individual measure—especially a heavily weighted one—can move a contract above or below a critical threshold. Contracts that attain the critical threshold score of 4 or higher qualify for a QBP.

32. As a result, the Medicare "Star Ratings" program today serves a twofold purpose: it functions as CMS's principal mechanism for evaluating and publicizing MAO care quality while simultaneously embodying the financial incentive framework Congress created to promote quality-driven competition among MAOs.

**B. Rebate retentions and the Quality Bonus Payment**

33. Under the MA program, MAOs submit bids to CMS in early June of the year preceding the contract year (*e.g.*, bids for MA contract year 2028 are due to CMS in June 2027). MAOs whose bids fall below the applicable benchmark receive a "rebate" from CMS, which they may use to enhance benefits, reduce cost-sharing, or lower premiums.

34. The proportion of that rebate an MAO retains is directly tied to its Star Rating. Contracts rated below 3.5 stars (including unrated or new plans) retain 50% of the rebate amount, whereas contracts achieving a rating of at least 3.5 but below 4.5 stars retain 65%. Contracts

reaching the highest tier of 4.5 stars or above retain the maximum 70% of the rebate, thereby providing higher-quality contracts with greater financial flexibility. This tiered framework means that a contract's Star Rating carries significant downstream implications not only for its QBPs but also for its ability to fund more generous benefit designs and sustain competitiveness in the marketplace.

35. Pursuant to 42 U.S.C. § 1395w-23(o), CMS remits a QBP to MAOs whose contracts achieve a Star Rating of 4 or above. The QBP takes the form of an elevated benchmark—the maximum per-member amount CMS will pay—which in turn enables the MAO to provide enhanced supplemental benefits, offer additional programs designed to improve health outcomes, and return excess payments to enrollees as rebates, among other things.

36. For a large MAO such as Centene, the difference between reaching the 4-Star threshold and falling just short can translate into millions of dollars in foregone annual rebates and bonus payments.

**C. The Medicare Advantage cycle**

37. An MA contract's Star Rating for a given year determines its rebate retention and QBP, if any, for the subsequent contract year. Those anticipated rebates and QBP are incorporated into the bids MAOs submit to CMS the preceding June.

38. As relevant here, CMS released the 2027 Star Ratings for Centene's (and all other MAO) contracts on October 8, 2026. Those 2027 Star Ratings govern Centene's rebate retentions and QBP for MA contract year 2028. Bids for the 2028 contracts are due to CMS in June 2027.

39. The following sets forth the typical schedule of key events in the Medicare Star Ratings cycle:

| **2027 Star Ratings – Key Periods and Events** | |
|---|---|
| Calendar Year 2025 | Measurement period for the performance data that serve as a baseline for Centene's 2027 Star Ratings. |
| June 1, 2026 | Statutory bid deadline for 2027, factoring in anticipated 2027 rebate retentions and QBP based on 2026 Star Ratings |
| Aug. 5, 2026 – Aug. 12, 2026 | Plan Preview 1 for 2027 Star Ratings |
| Sept. 8, 2026 – Sept. 15, 2026 | Plan Preview 2 for 2027 Star Ratings |
| Oct. 8, 2026 | 2027 Star Ratings Published |
| Oct. 15, 2026 | Annual Election Period commences |
| Jan. 1, 2027 | Medicare Advantage Open Enrollment commences |
| June 7, 2027 | Statutory bid deadline for 2028, factoring in anticipated 2028 rebate retentions and QBP based on 2027 Star Ratings |
| 2028 | QBPs stemming from 2027 Star Ratings paid |

## IV. Centene's 2027 Star Ratings

### A. Publication of 2027 Star Ratings in October 2026

40. On October 8, 2026, CMS published the 2027 Star Ratings. With respect to Centene, CMS assigned overall 2027 Star Ratings to 34 of Centene's contracts that were lower than they would have been had CMS not included the 17 unlawful measures, as set forth in Paragraph 17 above. Each of those contracts had ratings that (a) fell below the 4-Star threshold governing QBP eligibility under 42 U.S.C. § 1395w-23(o), (b) qualified for increased rebate percentages corresponding to their assigned Star Rating, or (c) both.

41. CMS also published Centene's measure-level Star Ratings on its website, making both the overall and measure-specific ratings accessible to Medicare beneficiaries, brokers, and the general public through the Plan Finder tool.

42. In publishing these Star Ratings, CMS relied on 17 measures that were unlawful for the same reasons previously considered and disposed of by this Court.

43. On November 7, 2025, Clover Insurance Company filed suit in this Court, challenging its *2026* Star Rating on the ground that CMS had unlawfully adopted certain measures used in calculating that rating.

44. In an order entered May 27, 2026, this Court found in favor of Clover, holding that 20 measures CMS had used in calculating the 2026 Star Ratings were legally flawed and should not have been relied upon. The Court based its holding on two grounds. First, that the Medicare statute (42 U.S.C. § 1395w-23(o)(4)(A)) bars CMS from incorporating Star Ratings measures calculated with data collected outside § 1395w-22(e). *Clover Ins. Co.*, 2026 WL 1483515, at *14. Second, that CMS's use of measures established or materially modified without adequate notice-and-comment violated 42 U.S.C. § 1395hh(a)(2). *Id*. at *25.

45. The chart below identifies the measures this Court held to be unlawful in its May 27, 2026, order in the *Clover* case:

| | |
|---|---|
| **Category 1:** Measures Based on Non-§ 1395w-22(e) Data Sources | • **C32** (Reviewing Appeals Decisions);<br>• **C33** (Call Center – Foreign Language Interpreter and TTY Availability);<br>• **D01** (Call Center – Foreign Language Interpreter and TTY Availability);<br>• **D05** (Rating of a Drug Plan);<br>• **D06** (Getting Needed Prescription Drugs);<br>• **D08** (Medication Adherence for Diabetes Medications);<br>• **D09** (Medication Adherence for Hypertension (RAS antagonists));<br>• **D10** (Medication Adherence for Cholesterol (Statins));<br>• **D11** (MTM Program Completion Rate for CMR); and<br>• **D12** (Statin Use in Persons with Diabetes). |
| **Category 2:** Measures Established or Materially Changed Without Notice-and-Comment Rulemaking | • **C03** (Annual Flu Vaccine);<br>• **C04** (Improving or Maintaining Physical Health);<br>• **C05** (Improving or Maintaining Mental Health);<br>• **C15** (Reducing the Risk of Falling);<br>• **C16** (Improving Bladder Control);<br>• **C22** (Getting Needed Care);<br>• **C23** (Getting Appointments and Care Quickly);<br>• **C24** (Customer Service);<br>• **C25** (Rating of Health Care Quality); and<br>• **C27** (Care Coordination). |

46. The Court vacated Clover's 2026 Star Rating and directed CMS to recalculate it consistent with its holdings.

47. CMS did not promptly appeal that decision or seek a stay. On the contrary, within two weeks of the order, CMS complied by recalculating Clover's 2026 Star Rating as this Court had directed. Remarkably, despite the fact that this Court never addressed Clover's 2027 Star Ratings (and consequently this Court's prior judgment did not apply to Clover's 2027 Star Ratings), CMS also voluntarily excluded the same measures for Clover's 2027 Star Ratings. This is notable because the measures that Centene challenges in this case are unlawful for the same reasons as advanced in *Clover*, and by voluntarily removing measures for Clover's 2027 Star Ratings, CMS has implicitly conceded that it implemented these measures in violation of the law—if not, there would be no reason to exclude them from Clover's 2027 Star Ratings.

48. Congress has not expanded CMS's legal authority over the Star Rating program in the intervening period. Indeed, nothing has changed in the past year such that the approach to Star Rating measures found unlawful in *Clover* might be considered lawful now, for purposes of calculating any MAO's 2027 Star Ratings.

49. Just as the measures found unlawful in *Clover* were defective because they were not promulgated through notice-and-comment rulemaking, the 17 measures Centene challenges in this case suffer from the same defect.

| | |
|---|---|
| Measures Established or Materially Changed Without Notice-and-Comment Rulemaking | • **C03** (Annual Flu Vaccine);<br>• **C12** (Diabetes Care – Blood Sugar Controlled);<br>• **C14** (Controlling Blood Pressure);<br>• **C16** (Improving Bladder Control);<br>• **C19** (Transitions of Care (Part C) – Average);<br>• **C20** (Follow-up after Emergency Department Visit for People with Multiple High-Risk Chronic Conditions);<br>• **C21** (Getting Needed Care);<br>• **C23** (Customer Service);<br>• **C24** (Overall Rating of Health Care Quality);<br>• **C25** (Rating of Health Plan);<br>• **C26** (Care Coordination);<br>• **C27** (Complaints about the Health Plan);<br>• **D02** (Complaints about the Drug Plan);<br>• **D05** (Rating of Drug Plan);<br>• **D08** (Medication Adherence for Diabetes Medications);<br>• **D09** (Medication Adherence for Hypertension (RAS antagonists)); and<br>• **D10** (Medication Adherence for Cholesterol (Statins)) |

50. Furthermore, six of these measures are unlawful for the additional reason that they fail to comply with the requirement at 42 U.S.C. § 1395w-23(o)(4)(A) that data must be "collected under section 1395w-22(e)":

| | |
|---|---|
| Measures Based on Non-§ 1395w-22(e) Data Sources | • **C27** (Complaints about the Health Plan);<br>• **D02** (Complaints about the Drug Plan);<br>• **D05** (Rating of a Drug Plan);<br>• **D08** (Medication Adherence for Diabetes Medications);<br>• **D09** (Medication Adherence for Hypertension (RAS antagonists)); and<br>• **D10** (Medication Adherence for Cholesterol (Statins)) |

### B. The impact of the unlawful 17 measures on Centene's MA contracts

51. Exhibit A to this Complaint presents a chart illustrating how the 2027 Star Ratings for each of Centene's contracts would change if those ratings were recalculated after excluding the 17 measures challenged herein. As Exhibit A demonstrates, absent the 17 unlawful measures, Centene projects that its contracts would have received increased overall 2027 Star Ratings and accordingly, would have been entitled to substantially larger rebates and QBPs.

52. As the designated parent organization (as that term is defined in 42 C.F.R. § 422.2) of the contracts listed in Exhibit A, Centene Corporation has a calculated enterprise weighted average Star Rating of all its contracts that gets applied to contracts that are considered "new" contracts under 42 C.F.R. § 422.166(d)(2)(vi). Based upon CMS's calculation of Centene Corporation's various contracts, the enterprise weighted average of its contracts is 3 Stars. However, had CMS calculated the contracts listed in Exhibit A by excluding the 17 unlawful measures, Centene Corporation's enterprise weighted average would be 4 Stars. That correct enterprise weighted average would then be applied to contracts H4158, H5272, H6971, and H7435 as they are "new" contracts that receive the enterprise weighted average for purposes of determining rebate retention and QBPs.

### C. Reputational harm caused by the publication of unlawfully derived Star Ratings

53. Moreover, CMS's publication of Star Ratings distorted by the inclusion of 17 unlawful measures has caused, and continues to cause, substantial reputational harm to Centene.

Star Ratings are publicly available on CMS's Medicare Plan Finder tool, where current and prospective Medicare beneficiaries consult them when making enrollment decisions and brokers and agents often emphasize Stars for selecting plans for enrollees. Simultaneously, because Star Ratings are relative, competing MAO ratings may be artificially elevated, further distorting how Centene's plans are perceived and casting them in a less favorable light.

54. The reputational implications of a below-threshold Star Rating extend beyond any single enrollment cycle. Brokers and third-party marketing organizations that steer Medicare beneficiaries toward particular plans may deprioritize or refuse to market plans rated below 4 stars, diminishing Centene's visibility and competitiveness in the marketplace. Employers and plan sponsors offering Medicare Advantage options to retirees may likewise treat Star Ratings as a proxy for plan quality, and a suppressed rating impairs Centene's ability to compete for and maintain those relationships.

55. Further, when a contract receives a Part C or Part D summary Star Rating less than 3 Stars, the contract receives a "Low-Performance Indicator" ("LPI"), which is displayed on the Medicare Plan Finder. An LPI acts as a visual warning to current and potential beneficiaries that a plan has a low Star Rating. This, in turn, leads to decreased enrollment and increased disenrollment. If a plan holds an LPI for three consecutive Star Rating periods, CMS has the legal authority to terminate the contract in its entirety. Two of Centene's contracts challenged here (H4661 and H6348) fall below the 3.0 summary Part D Star Rating due to the inclusion of the unlawful measures. Without the unlawful measures, the LPI would not apply to these contracts.

## CLAIMS FOR RELIEF

### COUNT I: AGENCY ACTION TAKEN WITHOUT OBSERVANCE OF PROCEDURE REQUIRED BY LAW (5 U.S.C. § 706(2)(D); 42 C.F.R. § 422.164)

56. Centene incorporates by reference the allegations set forth in paragraphs 1-55 above as if fully restated herein.

57. Under 5 U.S.C. § 706(2)(D), an agency is prohibited from acting without observance of procedure required by law.

58. Congress has required that CMS conduct notice-and-comment rulemaking and codify "by regulation" any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services or benefits under [Medicare]." *Azar v. Allina Health Servs.*, 587 U.S. 566, 570 (2019) (quoting 42 U.S.C. § 1395hh(a)(2)).

59. Furthermore, CMS's own regulations require it to adopt new quality measures through notice-and-comment rulemaking. *See* 42 C.F.R. § 422.164(c)(2) ("In advance of the measurement period, CMS will announce potential new measures and solicit feedback through the process described for changes in and adoption of payment and risk adjustment policies in section 1853(b) of the Act and then subsequently will propose and finalize new measures through rulemaking."). *See also id.* § 422.164(d) (requiring notice-and-comment rulemaking for substantive updates to existing measures).

60. CMS failed to undertake the required notice-and-comment rulemaking and codify "by regulation" the following measures applied to Centene in computing its 2027 Star Ratings: C03, C12, C14, C16, C19, C20, C21, C23, C24, C25, C26, C27, D02, D05, D08, D09, and D10.

Each of these measures establishes a substantive legal standard governing Centene's QBP eligibility—and therefore governing "the payment for services" within the meaning of 42 U.S.C. § 1395hh(a)(2)—yet none were promulgated by regulation.

61. Because CMS derived the 2027 Star Rating for the contracts identified in Exhibit A using measures adopted without observance of procedure required by law (*i.e.*, notice and comment), the Court should set aside each of Centene's unlawful overall 2027 Star Ratings for those contracts and direct CMS to recalculate those Star Ratings without regard to these measures.

62. In addition, because CMS derived the summary Part D Star Rating for H6348 and H4661 using measures adopted without observance of procedure required by law (*i.e.*, notice and comment), the Court should set aside each of Centene's unlawful summary Part D Star Ratings for those contracts and direct CMS to remove the LPI for those contracts.

**COUNT II:**
**AGENCY ACTION NOT IN ACCORDANCE WITH LAW, IN VIOLATION OF STATUTORY RIGHT, IN EXCESS OF STATUTORY AUTHORITY**
**(5 U.S.C. § 706(2)(A), (C))**

63. Centene incorporates by reference the allegations set forth in paragraphs 1-55 above as if fully restated herein.

64. Congress limited the data on which CMS's Star Ratings may be based to data for which an MAO provides for the collection, analysis, or reporting as part of its quality improvement program. 42 U.S.C. § 1395w-23(o)(4)(A) (requiring Star Ratings to be based on "data collected under section 1395w-22(e) of this title").

65. CMS calculated the 2027 Star Ratings for the contracts identified in Exhibit A, as well as H6348 and H4661, using measures that are based on data not collected under § 1395w-22(e).

66. Six of the measures challenged in this lawsuit (C27, D02, D05, D08, D09, and D10) were calculated using data generated outside the HEDIS, HOS, and CAHPS programs established under § 1395w-22(e)—including IRE contractor data, covert CMS call-monitoring data, Part D PDE administrative claims data, Part D plan-reported MTM data, and Part D CAHPS data administered under Part D authority rather than § 1395w-22(e).

67. Because CMS calculated the 2027 Star Ratings for the contracts identified in Exhibit A using data not collected under § 1395w-22(e), the Court should set aside the unlawful 2027 Star Ratings for those contracts and direct CMS to recalculate those Star Ratings without regard to these measures.

68. In addition, because CMS derived the summary Part D Star Rating for H6348 and H4661 using data not collected under § 1395w-22(e), the Court should set aside each of Centene's unlawful summary Part D Star Ratings for those contracts and direct CMS to remove the LPI for those contracts.

## PRAYER FOR RELIEF

WHEREFORE, Centene respectfully requests that the Court enter judgment in their favor and grant the following relief:

a) Declare that CMS's inclusion of measures C03, C12, C14, C16, C19, C20, C21, C23, C24, C25, C26, C27, D02, D05, D08, D09, and D10 in calculating Centene's 2027 Star Ratings was without observance of procedure required by law because CMS failed to adopt those measures through public notice and comment, as required by 42 U.S.C. § 1395hh(a)(2) and 42 C.F.R. § 422.164;

b) Declare that CMS's inclusion of measures C27, D02, D05, D08, D09, and D10 in calculating the 2027 Star Ratings for the contracts identified in Exhibit A are unlawful for the additional reason that CMS exceeded its statutory authority because those measures were

calculated with data not collected under 42 U.S.C. § 1395w-22(e), as required by 42 U.S.C. § 1395w-23(o)(4)(A);

c) Set aside the overall 2027 Star Ratings of the contracts identified in Exhibit A and remand to CMS with instructions to recalculate for each such contract the overall 2027 Star Rating after excluding the 17 unlawful measures identified in this Complaint and at the correct overall Star Rating as identified in Exhibit A;

d) Recalculate the Part D summary Star Rating for H4661 and H6348 and order CMS to strike the LPIs from such contracts;

e) Order CMS to determine all 2028 QBPs and rebates in accordance with the recalculated and correct Star Ratings as reflected in Exhibit A;

f) Declare that Centene Corporation's enterprise weighted average would be 4 Stars and that such Star Rating would be the applicable enterprise weighted average for purposes of determining the rebate retention and QBPs for contracts H4158, H5272, H6971, and H7435;

g) Order CMS to permit Plaintiffs to revise any previously submitted MA bid(s) necessary to effectuate the judgment, consistent with this Court's order, the recalculated Star Ratings, and the revised QBPs and rebates; and

h) Award Plaintiffs such other and further relief as the Court may deem just and proper, including costs and fees, as permitted by law.

[*Signature Page Follows*]

Dated: October 22, 2026

*/s/T. Joshua R. Archer*

Benjamin H. Brewton
Georgia Bar No. 002530
bbrewton@balch.com
Jena C. Lombard
Georgia Bar No. 213734
jlombard@balch.com
**Balch & Bingham LLP**
801 Broad Street, Suite 800
Augusta, Georgia 30901
Telephone: (706) 842-3711
Facsimile: (866) 258-8984

T. Joshua R. Archer
Georgia Bar No. 021208
jarcher@balch.com
James L. Hollis
Georgia Bar No. 930998
jhollis@balch.com
**Balch & Bingham, LLP**
30 Ivan Allen Jr. Blvd. NW, Suite 700
Atlanta, Georgia 30308
Telephone: (404) 962-3585
Facsimile: (866) 332-8969

Daniel W. Wolff (*pro hac vice* forthcoming)
DWolff@crowell.com
D.C. Bar No. 486733
**Crowell & Moring LLP**
600 Fifth Street, N.W.
Washington, DC 20001
Telephone: (202) 624-2621

Steven D. Hamilton (*pro hac vice* forthcoming)
StevenHamilton@crowell.com
Illinois Bar No. 6289663
**Crowell & Moring LLP**
300 N. LaSalle Drive, Suite 2500
Chicago, IL 60654
Telephone: (312) 379-7615

*Counsel for Plaintiffs*